**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KEVIN L. JACKSON,

      Plaintiff,

   v.

HONEYWELL INTERNATIONAL, INC.,

      Defendant.

Civ. Action No. 20-2421
     (ZMF/EGS)

## MEMORANDUM OPINION

Plaintiff Kevin Jackson ("Mr. Jackson" or "Plaintiff") initiated this suit against his former employer, Honeywell International, Inc. ("Honeywell" or "Defendant"), after his termination from the company in 2020. *See* R. & R., ECF No. 36 at 1.[1] Mr. Jackson alleges that Honeywell terminated him due to his race, in violation of 42 U.S.C. § 1981, the D.C. Human Rights Act ("DCHRA"), and the Maryland Fair Employment Practices Act ("MFEPA"). *Id.* He also claims that Honeywell is liable for intentional infliction of emotional distress ("IIED") due to the termination and its circumstances. *Id.* Honeywell moved for summary judgment on all of Mr. Jackson's claims and Magistrate Judge Faruqui issued a Report and Recommendation, which recommended granting Honeywell's motion. *See id.*

---

[1] When citing electronic filings throughout this Opinion, the Court cites to the ECF header page number, not the page number of the filed document.

Pending before the Court are Honeywell's Motion for Summary Judgment, *see* Def.'s Mot. for Summ. J. ("Def.'s SJM"), ECF No. 24; and Mr. Jackson's objections to Magistrate Judge Faruqui's Report and Recommendation, *see* Objs. to the Magistrate Judge's Proposed Findings and Recommendations ("Pl.'s Objs."), ECF No. 37. Upon careful consideration of the Report and Recommendation, the objections and opposition thereto, the underlying motion and its opposition, the applicable law, and the entire record herein, the Court hereby **ADPOTS** the Report and Recommendation, *see* ECF No. 36; and **GRANTS** Honeywell's Motion for Summary Judgment, *see* ECF No. 24, for all of Mr. Jackson's claims.

**I. Background**

    **A. Factual[2]**

    Honeywell hired Kevin Jackson as the Business Development Director for its Aerospace Americas Aftermarket ("AAM") business unit in January 2017. Reply to Pl.'s Answer to Def.'s Statement of Material Facts Not in Dispute ("SOMF"), ECF No. 33-1 ¶ 1. Mr. Jackson was placed on the Air Force team within AAM and directly reported to Ms. Elisabeth Boucek ("Ms. Boucek"). *Id.* ¶ 2. Mr. Jackson was the only Business Development Director on the Air Force team and had greater expectations than his colleagues. *Id.* ¶ 5. Mr. John Bell ("Mr. Bell") was the only other person supervised by Ms. Boucek with business development responsibilities, but he was not on the same director level as Mr. Jackson. *Id.* ¶¶ 6-7.

    As of Spring 2018, Ms. Boucek reported to the Vice

---

[2] The factual background is taken from Defendant's Statement of Material Facts. *See* Reply to Pl.'s Answer to Def.'s Statement of Material Facts Not in Dispute ("SOMF"), ECF No. 33-1. Although Mr. Jackson often expressed his disagreement, he failed to properly dispute any of Defendant's facts. For example, Mr. Jackson often argued that he could "neither admit nor deny the allegations" from Defendant's stated fact because "defendant failed to produce any evidence, other than the self-serving testimony of [two of its employees] to substantiate [the] allegations." *See, e.g.*, *id.* ¶ 28. Since the parties had ample time for discovery, Mr. Jackson's failure to uncover any evidence that supports his position is not sufficient to properly deny Defendant's supported factual statements. Furthermore, Mr. Jackson's disbelief of Defendant's employees' sworn statements is also not enough to properly controvert Defendant's facts. And finally, Mr. Jackson has failed to

President of AAM, Mr. Steve Williams ("Mr. Williams"). *Id.* ¶ 8.
Mr. Williams was intimately involved with AAM's business
development in his role and interacted with members of the
business development team at least weekly to discuss their
leads. *Id.* ¶ 17. He also received weekly reports from each
member of the AAM business development team and met with them
frequently to discuss those reports and business prospects. *Id.*
¶ 18.

The COVID-19 pandemic caused a loss of revenue, a reduction
in profits, a shortage in supplies, and challenges in meeting
delivery expectations for Honeywell. *Id.* ¶ 29. The Aerospace
Leadership Team implemented furloughs and reduced executive
compensation to help cut costs; Mr. Jackson was one of the
furloughed employees. *Id.* ¶¶ 31, 33, 35. When those measures
failed to alleviate the problem, Honeywell decided to implement
a reduction in force ("RIF"). *Id.* ¶ 38. Each business unit had a
set target for the RIF. *Id.* ¶ 42.

---

comport with Federal Rule of Civil Procedure 56(d) in claiming
that any facts were unavailable to him for purposes of this
motion. Similarly, Mr. Jackson simply denies several factual
allegations without any additional information—and crucially,
without any citations to the record supporting his position.
*See, e.g.*, SOMF, ECF No. 33-1 ¶ 47; *see also* Fed. R. Civ. P.
56(c)(1) (requiring parties to "support the assertion" of a
genuine factual dispute with "citing to particular parts of
materials in the record"). Since Mr. Jackson has failed to
properly deny any of Defendant's facts, the Court considers
Defendant's facts undisputed for purposes of Defendant's Motion
for Summary Judgment. *See* Fed. R. Civ. P. 56(e)(2).

For AAM, Mr. Williams was tasked with making
recommendations for the RIF. *Id.* ¶ 47. His supervisors required
him to consider "what customers the role supported, the market
that the role operated in, and the role's available pipeline" in
making recommendations to eliminate or consolidate roles as part
of the RIF. *Id.* ¶ 46. Mr. Williams was also required to attend
training related to the RIF and he was assigned to work with a
Human Resources Manager, Mr. Ethan Garrett ("Mr. Garrett"), to
apply the RIF criteria and policy. *Id.* ¶¶ 11, 48-49.

In March 2020, Mr. Williams provided recommendations for
twelve individuals for the RIF, eleven of whom were white. *Id.*
¶ 52. Mr. Williams considered "the individual's current
performance, past performance, ability to develop new business,
sales pipeline, and ability to take on additional work" in
making his recommendations. *Id.* ¶ 53. Mr. Williams and Mr.
Garrett "discussed the recommendations on several occasions,
including applying the reduction-in-force criteria correctly and
determining when an elimination versus a consolidation would
apply." *Id.* ¶ 57. Mr. Jackson's position was recommended for
elimination because of the business challenges in the Aerospace
Aftermarket Defense team, which could be supported by the
elimination of the Business Development Director position
because it had the weakest sales pipeline and its elimination
allowed for a smaller team to focus on more imminent business

opportunities. *Id.* ¶ 60.

Honeywell adopted Mr. Williams's recommendation and
eliminated Mr. Jackson's position of Business Development
Director through the RIF. *Id.* ¶ 58. Mr. Garrett concurred that
selecting Mr. Jackson for the RIF was "appropriate and
consistent with policy" and in May 2020 Mr. Jackson was informed
that his position was eliminated through the RIF due to the
pandemic. *Id.* ¶¶ 59, 64-65.

**B. Procedural**

On August 29, 2020, Mr. Jackson filed suit against
Honeywell for racial discrimination in terminating his position
as part of the RIF. *See* Compl., ECF No. 1 ¶¶ 1, 7. He alleged
violations of 42 U.S.C. § 1981, the DCHRA, the MFEPA, and
intentional infliction of emotional distress. *Id.* ¶¶ 23, 27, 31,
35. The parties engaged in discovery throughout 2021 and
notified the Court in early 2022 that they were unable to come
to a settlement agreement. *See* Def. Honeywell's Status Report,
ECF No. 21 at 1 (stating that "[t]o date, the parties have
completed discovery" and were "unable to resolve the case during
the December 17, 2021 settlement conference, and since then,
have not resolved the matter"); Pl.'s Status Report, ECF No. 22
(stating that Plaintiff had "no objections to any of the
statements . . . made in Defendant Honeywell's Status Report").

In April 2022, Honeywell filed its Motion for Summary

Judgment on all of Mr. Jackson's claims. *See* Def.'s SJM, ECF No. 24. After the motion became ripe, this Court referred it to Magistrate Judge Faruqui for an initial Report and Recommendation. *See* Minute Order (Apr. 19, 2023). Magistrate Judge Faruqui submitted his Report and Recommendation, which recommended granting summary judgment to Honeywell, in November 2023. *See* R. & R., ECF No. 36 at 1. Mr. Jackson timely objected to the Report and Recommendation. *See* Pl.'s Objs., ECF No. 37. The following month Honeywell submitted its response, *see* Def.'s Resp. to Pl.'s 72(b) Objs. to the Magistrate's R. & R. ("Def.'s Resp."), ECF No. 38; and Mr. Jackson submitted his reply, *see* Pl.'s Reply in Supp. of Pl.'s Objs. to the Magistrate Judge's Proposed Findings and Recommendations, ECF No. 39. Honeywell's Motion for Summary Judgment and Mr. Jackson's objections to the Report and Recommendation are now ripe and ready for adjudication.

## II. Legal Standards

### A. Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment motions must be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party bears the initial burden "of informing the district court of the

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also* Fed. R. Civ. P. 56(c)(1). This burden "may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

In evaluating a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255. Summary judgment turns on "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party" then the district court cannot grant summary judgment. *Id.* at 248.

For purposes of summary judgment, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The Court's role at the summary judgment stage "is not . . . to weigh the evidence and determine the truth of

the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

### B. Objections to Report and Recommendation

Pursuant to Federal Rule of Civil Procedure 72(b), a party may file specific written objections once a magistrate judge has entered a recommended disposition. Fed. R. Civ. P. 72(b)(2). A district court "may accept, reject, or modify the recommended disposition." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). A district court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Houlahan v. Brown*, 979 F. Supp. 2d 86, 88 (D.D.C. 2013) (internal quotation marks omitted). "Under the clearly erroneous standard, the 'magistrate judge's decision is entitled to great deference'" and "is clearly erroneous only 'if on the entire evidence the court is left with the definite and firm conviction that a mistake has been committed.'" *Buie v. District of Columbia*, No. 16-1920, 2019 WL 4345712, at *3 (D.D.C. Sept. 12, 2019) (quoting *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009)).

Objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made

and the basis for the objection." LCvR 72.3(b). "[O]bjections which merely rehash an argument presented and considered by the magistrate judge are not properly objected to and are therefore not entitled to de novo review." *Shurtleff v. U.S. E.P.A.*, 991 F. Supp. 2d 1, 8 (D.D.C. 2013) (internal quotation marks omitted).

### C. Section 1981 Racial Discrimination Claims

Section 1981 prohibits racial discrimination in the "making, performance, modification, and termination of contracts, and the enjoyments of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b). "To evaluate a section 1981 claim, courts use the three-step *McDonnell Douglas* framework for establishing racial discrimination under Title VII." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (internal quotation marks omitted).

Under this "method of proof," (1) "the employee must establish a *prima facie* case"; (2) if they succeed, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions"; and (3) "[i]f the employer meets its burden of production, the burden then shifts back to the employee, who must prove that, despite the proffered reason, [they have] been the victim of intentional discrimination." *Figueroa v. Pompeo*, 923 F.3d 1078, 1086 (D.C.

Cir. 2019) (internal quotation marks omitted). However, when considering a motion for summary judgment, instead of focusing on a plaintiff's *prima facie* case, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") has clarified that "where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision," "the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . ?" *Brady v. Off. of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Figueroa*, 923 F.3d at 1087 (describing the *Brady* question as "a shortcut for the District Court to tackle the critical question of discrimination" (internal quotation marks omitted)).

## III. Analysis

Mr. Jackson objects to the Report and Recommendation's conclusion that Honeywell should be granted summary judgment on all claims and argues that "the Magistrate Judge ignored relevant case law, improperly decided issues of credibility and intent against Mr. Jackson, and improperly drew inferences from the facts in favor of defendant." Pl.'s Objs., ECF No. 37 at 2. Mr. Jackson identifies six issues in particular which he argues

have "genuine issues of material fact" such that summary
judgment would be inappropriate. *See id.* at 10. Defendant
counters that Mr. Jackson "fails to identify . . . record
evidence" supporting his claims of genuine issues of material
fact and also "fails to explain why he did not controvert
Defendant's [Statement of Material Facts] in his opposition."
Def.'s Resp., ECF No. 38 at 5. Defendant also argues that Mr.
Jackson's objections "simply reiterate[]" his original arguments
and thus are only entitled to clear error review in addition to
being meritless. *See id.* at 6 (internal quotation marks
omitted).

The Court agrees with Defendant that Mr. Jackson's
objections are without merit and the evidence in the record
supports the Report and Recommendation's conclusion of granting
summary judgment to Defendant. Although the Court does not
conclude that the standard of review is dispositive on this
motion, the Court will nevertheless begin with Defendant's
argument on that issue before addressing Mr. Jackson's
objections.

**A. Standard of Review**

Defendant argues that Mr. Jackson's objections "simply
reiterate[] [his] original arguments" from his briefing in
opposition to Defendant's Motion for Summary Judgment and
therefore this Court should review the Report and Recommendation

"*only for clear error.*" Def.'s Resp., ECF No. 38 at 6 (internal quotation marks omitted). Mr. Jackson fails to respond to this argument in his reply brief and therefore, for that reason alone, this Court may consider it conceded. *See Am. Waterways Operators v. Regan*, 590 F. Supp. 3d 126, 138 (D.D.C. 2022) ("'If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.'" (quoting *Day v. D.C. Dep't of Consumer & Regul. Affs.*, 191 F. Supp. 3d 154, 159 (D.D.C. 2002))).

However, Defendant is also correct that "conclusory or general objections" or "simply reiterat[ing] . . . original arguments" are not proper objections to a Report and Recommendation and thus are only reviewed for clear error. *See Houlahan*, 979 F. Supp. 2d at 88. And the Court agrees that Mr. Jackson's objections are clear examples of simply repeating previously made arguments.

For example, Mr. Jackson's first objection to the Report and Recommendation is that Magistrate Judge Faruqui erred in concluding that there was not a genuine issue of material fact regarding whether "defendant's stated reason for terminating Mr. Jackson was false." Pl.'s Objs., ECF No. 37 at 10. As Defendant points out, this is the same argument that Mr. Jackson made in his briefing opposing Defendant's Motion for Summary Judgment. *See* Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Summ. J.

("Pl.'s Opp'n to SJM"), ECF No. 29-2 at 16-17 (stating that "there remain genuine issues of material fact in dispute sufficient to require the denial of defendant's Motion for Summary Judgment" regarding whether "defendant's stated rationale for the RIF is legitimate or pretextual"). In fact, Mr. Jackson's briefing on this point in his opposition to the Motion for Summary Judgment is nearly identical to his objection in this round of briefing. *Compare* Pl.'s Objs, ECF No. 37 at 18, *with* Pl.'s Opp'n to SJM, ECF No. 29-2 at 16-17. Defendant identifies—and supplements with examples from Mr. Jackson's briefing—that this same pattern is true for every one of Mr. Jackson's objections to the Report and Recommendation. *See* Def.'s Resp., ECF No. 38 at 6 n.6. The Court agrees and thus concludes that Mr. Jackson's objections should only be reviewed for clear error.[3]

**B. Plaintiff's Objections**

Mr. Jackson asserts that Honeywell should not be granted summary judgment because genuine issues of material fact exist in the record pertaining to: (1) whether "defendant's stated reason for terminating Mr. Jackson was false"; (2) whether "[Mr.] Williams's comparison of [Mr. Jackson's] performance with

---

[3] Although the Court holds that the Report and Recommendation is subject to clear error review, for the reasons below, the Court also determines that it would reach the same conclusions under *de novo* review.

[Mr.] Bell's performance contained errors too obvious to be unintentional and concealed discriminatory motives"; (3) whether "Mr. Williams preferred Mr. Bell because he was White"; (4) whether "defendant failed to follow its established RIF procedures and policy when it terminated Mr. Jackson and redistributed his work"; (5) whether "labeling Mr. Jackson's discharge a position elimination rather than a consolidation violated defendant's RIF policies"; and (6) whether "Mr. Jackson's performance and sales pipeline were superior to Mr. Bell['s]." Pl.'s Objs., ECF No. 37 at 10; *see also id.* at 17-18 (listing four similar "critical issues" with "material facts in dispute"). The Court agrees with Defendant that all of "Plaintiff's objections and alleged genuine disputes of material facts lack merit." *See* Def.'s Resp., ECF No. 38 at 6.

### 1. RIF

The Court will begin with Mr. Jackson's objections related to Honeywell's stated reason for terminating him—the RIF. Mr. Jackson's first objection on this issue appears to be that the reason given for the RIF itself was false. *See* Pl.'s Objs., ECF No. 37 at 18. He argues that "defendant failed to produce any evidence during discovery to substantiate" the contention that Honeywell "implemented the RIF in 2020 because of the negative economic impact on its business caused by the Covid-19 pandemic." *Id.* He claims that his business unit did not suffer

"the same negative economic impact" as other parts of Honeywell's business. *Id.* He then faults Honeywell for not producing "evidence of the Covid-19 pandemic's impact on [his business unit], such as sales histories, financial and earnings reports, reports concerning financial projections for the future, and the like." *Id.* Mr. Jackson's overall argument appears to be that a RIF in his division was unnecessary, which, even if true, is immaterial to his legal claims. As the D.C. Circuit has emphasized, "courts are not super-personnel department[s] that reexamine[] an entity's business decision[s]." *Stewart v. Ashcroft*, 352 F.3d 422, 429 (D.C. Cir. 2003). The court's only job is to determine if discrimination infected an otherwise innocuous business decision.

Furthermore, Mr. Jackson's claim that he believed an RIF was not necessary for his division is not suggestive of pretext in this context. Honeywell, through the deposition of Mr. Williams, provided ample evidence that its business was in decline, which led to the RIF. Mr. Williams explained that "[a]s a result of the pandemic, Honeywell experienced a loss of revenue, a reduction in profits, a shortage in supplies due to supplier chain issues, and challenges in meeting delivery expectations" and that Honeywell implemented furloughs and a ten percent reduction in executive compensation before implementing the RIF to try and relieve some of the financial pressure. SOMF,

ECF No. 33-1 ¶¶ 29, 35. Honeywell is not required to provide additional proof substantiating its business decision—despite Mr. Jackson's suggestions. This is especially true given that Mr. Jackson's only "evidence" refuting Honeywell's assertions is his own assertion that the pandemic did not impact his division as drastically as others. *See* Pl.'s Objs., ECF No. 37 at 18 (citing only Mr. Jackson's own declaration as evidence); Decl. of Kevin Jackson ("Jackson Decl."), ECF No. 29-4 ¶ 4 ("The . . . Covid-19 pandemic . . . did not have the same negative economic impact on Honeywell's Defense Americas business as it did on Honeywell's commercial airline business. The Defense Americas business experienced very little negative economic impact."). While it may be true that Honeywell could have cut personnel only from the divisions most impacted by the pandemic, it is also true that Honeywell was free to make economic decisions as it saw fit during a time of financial crisis for the company. *See Stewart*, 352 F.3d at 429; *Holcomb v. Powell*, 433 F.3d 889, 897 (D.C. Cir. 2006). No evidence in the record suggests that Honeywell's chosen method of reducing costs was anything other than a business decision completely within its purview. Therefore, the Court rejects Mr. Jackson's claim that Honeywell "failed to produce any evidence" justifying its RIF and that the RIF was pretextual.

Mr. Jackson's next argument about the RIF is that Honeywell

failed to follow its "established RIF procedures and policy when it terminated Mr. Jackson." Pl.'s Objs., ECF No. 37 at 10. Specifically, Mr. Jackson argues that "labeling [his] discharge a position elimination rather than a consolidation violated defendant's RIF policies." *Id.* He claims that "[t]he facts are in dispute concerning whether Mr. Jackson's employment was terminated as part of a job consolidation or a job elimination." *Id.* at 19.

As an initial matter, the Court agrees that failing to follow established procedures could be indicative of pretext in a discrimination case. *See Jones v. Ottenberg's Bakers, Inc.*, 999 F. Supp. 2d 185, 191 (D.D.C. 2013) ("Indeed, deviations from standard procedures may even give rise to an inference of pretext at the summary-judgment stage." (internal quotation marks omitted)). However, Mr. Jackson has failed to establish that Honeywell deviated from its established procedures in his termination—regardless of whether it was characterized as a position consolidation or elimination.

Mr. Jackson claims that his termination was a job consolidation, rather than a job elimination. *See* Pl.'s Objs., ECF No. 37 at 20. For job consolidations, Honeywell's RIF procedure requires considering first "relative skills and abilities . . . to do the remaining and future work," then "the existence of documented performance issues," and finally "length

of service" in that order, only looking to the next criteria
when the previous ones "are not objectively determinative when
evaluating the Covered Employees being considered for RIF within
a particular job classification or function." *Id.* at 19. In
considering individuals for the RIF, Mr. Williams explained that
he "considered the individual's current performance, past
performance, ability to develop new business, sales pipeline,
and ability to take on additional work." SOMF, ECF No. 33-1
¶ 53. And that he looked at "the individual's weekly reports,
contact plans, next steps on each opportunity, and the status of
each opportunity." *Id.* ¶ 54. The criteria Mr. Williams
considered in recommending employees for the RIF fits the
consolidation procedure of considering first "relative skills
and abilities . . . to do the remaining and future work." Mr.
Jackson resists this conclusion by arguing that the "performance
data" indicated that "Mr. Jackson had superior skills and
abilities in comparison to Mr. Bell" and thus that "Mr. Bell
should have been selected for termination." Pl.'s Objs., ECF No.
37 at 20. However, Mr. Jackson's disagreement with the outcome
of the procedure does not convince the Court that the procedure
itself was disregarded. As the Report and Recommendation noted,
Mr. Williams believed that Mr. Bell performed better and had
superior skills to Mr. Jackson. *See* R. & R., ECF No. 36 at 6.
Although Mr. Williams ultimately concluded that the comparison

was unnecessary since Mr. Jackson's position should be eliminated for business reasons beyond Mr. Jackson's control, *see* SOMF, ECF No. 33-1 ¶¶ 58, 60; Mr. Williams still followed the RIF procedure for a consolidation. Any factual dispute over whether Mr. Jackson's RIF was a position elimination or consolidation is immaterial because the procedure Mr. Williams took to implement the RIF was consistent with either policy. *See* R. & R., ECF No. 36 at 8 (concluding that "Honeywell equally could have terminated Mr. Jackson via job consolidation" because his "skills and abilities" were "primary determining factors in job consolidations" (internal quotation marks omitted)). Therefore, the Court rejects Mr. Jackson's argument that any factual contention about his RIF being a position elimination versus a consolidation would preclude granting Honeywell summary judgment.

### 2. Job Performance

Mr. Jackson also objects to the facts related to his job performance in comparison to Mr. Bell's performance. Specifically, Mr. Jackson argues that Mr. Williams's comparison of the two "contained errors too obvious to be unintentional and concealed discriminatory motives" and that his "performance and sales pipeline were superior to Mr. Bell['s]." Pl.'s Objs., ECF No. 37 at 10. For support, Mr. Jackson cites Ms. Boucek's deposition that explained how she gave Mr. Williams information

about Mr. Bell's and Mr. Jackson's sales performances to date
and that the "data showed that Mr. Jackson had closed more deals
and had a larger sales pipeline than Mr. Bell." Pl.'s Objs., ECF
No. 37 at 12 (citing Pl.'s Ex. E—Deposition of Elisabeth Boucek,
ECF No. 31-1 at 55, 57, 59-66). As noted in the Report and
Recommendation, Mr. Williams in his own deposition stated that
he considered an "individual's current performance, past
performance, ability to develop new business, sales pipeline,
and ability to take on additional work" before making his
recommendations for the RIF. SOMF, ECF No. 33-1 ¶ 53.
Furthermore, with respect to Mr. Jackson specifically, Mr.
Williams explained that based on his personal assessment of
"weekly reports, . . . meetings, sales calls, [and] trade
shows," Mr. Bell "was far more active" than Mr. Jackson. Def.'s
Ex. C—Deposition of Steve Williams, ECF No. 24-6 at 31-32. He
also stated that he found Mr. Bell's "skill set . . . more
valuable than Mr. Jackson's in developing new business," and
that Mr. Jackson was lacking in "[i]ndustry contacts" and
"experience" in comparison to Mr. Bell. *Id.* at 32-33.

As the Report and Recommendation explained, Mr. Williams
had concrete reasons for why he believed Mr. Bell should be
retained over Mr. Jackson. *See* R. & R., ECF No. 36 at 6. Mr.
Jackson argues that Mr. Williams claims not to have seen the
documents Ms. Boucek sent to him and that "[t]he Magistrate

Judge apparently improperly believed that testimony of Mr.
Williams, despite the fact that it was not within his province
to do so." Pl.'s Objs., ECF No. 37 at 12. However, the Report
and Recommendation makes no such indication. It explains Mr.
Williams's own account of his assessment and correctly states
that it was "Mr. Williams's right to disagree with Ms. Boucek"
and that to the extent Mr. Williams ignored Ms. Boucek's
assessment or other relevant data, that is not enough to
establish pretext since "Mr. Williams offered several reasons
for his honest beliefs about Mr. Jackson." *See* R. & R., ECF No.
36 at 7; *see also Figueroa*, 923 F.3d at 1092 ("an employer at
the second prong [of the *McDonnell Douglas* framework] must
proffer admissible evidence showing a legitimate,
nondiscriminatory, clear, and reasonably specific explanation
for its actions" and "[w]hen the reason involves subjective
criteria, the evidence must provide fair notice as to how the
employer applied the standards to the employee's own
circumstances").

Mr. Jackson's objections boil down to simple disagreement
with Mr. Williams's assessment of who was the more valuable
employee. Although Mr. Jackson may be correct that his sales
pipeline was superior and he had closed more sales that year,
Mr. Williams found sales skills, experience, and industry
contacts to be the more valuable attributes. *See Vatel v.*

*Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)
("[I]t is the perception of the decision maker which is
relevant, not the self-assessment of the plaintiff." (internal
quotation marks omitted)). The Court cannot conclude that this
preference indicates "errors too obvious to be unintentional"
and thus suggestive of "discriminatory motives." *See Hairston v.
Vance-Cooks*, 773 F.3d 266, 272 (D.C. Cir. 2014) ("Even if a
plaintiff was victimized by poor selection procedures, we may
not second-guess an employer's personnel decision absent
demonstrably discriminatory motive." (internal quotation marks
omitted)).

### 3. Other Evidence of Discrimination and Other Claims

Mr. Jackson also argues that "[t]he summary judgment record
contains sufficient evidence to establish . . . that Mr.
Williams preferred Mr. Bell because he was White." Pl.'s Objs.,
ECF No. 37 at 10. However, Mr. Jackson fails to support this
argument with any evidence.

Mr. Jackson argues that "Mr. Williams rejected his
overtures to participate in work-related events and how Mr.
Williams related to him in a standoffish manner," which
"suggests that Mr. Williams did whatever was necessary to
manipulate the RIF process to ensure that his personal favorite,
Mr. Bell, would survive the RIF, at the expense of Mr. Jackson,
who objectively was a superior performer." *Id.* at 20-21. Not

only does Mr. Jackson fail to cite any evidence in the record to substantiate his facts, the facts, even if true, do not suggest that any favoritism was due to race. Mr. Jackson never alleges, much less supports with evidence, that Mr. Williams's alleged "standoffish" nature and favoritism was connected to either Mr. Bell's or Mr. Jackson's race. *Cf. Smith v. Napolitano*, 626 F. Supp. 2d 81, 97 (D.D.C. 2009) (observing that "[c]ourts in this jurisdiction" have held that "[e]ven if there ha[s] been favoritism in the selection process" that "does not violate [the law] when such [selection] is based on the qualifications of the party and not on some basis prohibited by [law]" in the context an "employer's preselection of a job candidate" for employment).

Similarly, Mr. Jackson argues that Mr. Williams "did not neutrally apply the RIF criteria to Mr. Bell" and that the "evidence shows" that Mr. Williams was "motivated by personal bias in favor of Mr. Bell and against Mr. Jackson." *Id.* at 21. Once again, this statement, devoid of any factual content or citations to the record, does not convince the Court that any favoritism or unfairness was motivated by *racial* bias as opposed to alleged *personal* bias. In fact, as the Report and Recommendation points out, "19 of the 20 individuals that Mr. Williams recommended to be part of the RIF were white," which "cuts against Mr. Jackson's argument that discrimination was the real reason for his termination." R. & R., ECF No. 36 at 8

(citing SOMF, ECF No. 33-1 ¶¶ 87-88). Mr. Jackson does not respond to this fact in his briefing; nor does he provide any other evidence suggestive of discrimination. Therefore, the Court rejects Mr. Jackson's claims about favoritism suggesting racial bias and agrees with the Report and Recommendation that Mr. Jackson has failed to establish that Honeywell gave "'better treatment [to] similarly situated employees outside the plaintiff's protected group.'" R. & R., ECF No. 36 at 8 (quoting *Webster v. U.S. Dep't of Energy*, 443 F. Supp. 3d 67, 78 (D.D.C. 2020)).

Finally, Mr. Jackson objects to the Report and Recommendation's conclusions that Honeywell is entitled to summary judgment on his other claims in this case. *See* Pl.'s Objs., ECF No. 37 at 1-2.[4] As the Report and Recommendation correctly noted, each of Mr. Jackson's other claims are either premised on the success of or analyzed under the same standard as his § 1981 claim. *See* R. & R., ECF No. 36 at 9-10. Thus, the Court concludes that Honeywell is also entitled to summary judgment on those claims for the reasons stated above.

Additionally, Mr. Jackson requests a hearing on his objections, *see* Pl.'s Objs., ECF No. 37 at 21, which the Court

---

[4] Mr. Jackson did not mention his MFEPA claim in his briefing and thus the Court does not understand Mr. Jackson to be challenging the Magistrate Judge's recommendation to grant Honeywell summary judgment on this claim.

**DENIES** because the existing record is sufficient to resolve Mr. Jackson's objections.

## IV. Conclusion

For the foregoing reasons the Court **ADOPTS** Magistrate Judge Faruqui's Report and Recommendation in full, *see* ECF No. 36; and **GRANTS** Defendant's Motion for Summary Judgment, *see* ECF No. 24. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:    Emmet G. Sullivan**
**          United States District Judge**
**          August 29, 2024**